UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JESSE L. WESLEY, III, | ) |
| Plaintiff, | ) No. 1:15-CV-3012-LRS |
| v. | ) **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| TOWN SQUARE MEDIA WEST CENTRAL RADIO BROADCASTING; TOWN SQUARE MEDIA TRI-CITIES, LLC; and TOWNSQUARE MEDIA YAKIMA, LLC, | ) |
| Defendants. | ) |

**BEFORE THE COURT** is Defendants' Motion For Summary Judgment (ECF No. 41). This motion is heard without oral argument.

## I. BACKGROUND

Plaintiff's First Amended Complaint (ECF No. 4) alleges causes of action against his former employer for disability discrimination in violation of the Washington Law Against Discrimination (WLAD), RCW 49.60 *et seq.*, age discrimination in violation of the WLAD and RCW 49.44.090, and violation of the federal Family and Medical Leave Act (FMLA), 29 U.S.C. §2601 *et seq.*, and the Washington Family Leave Act (WFLA), RCW 49.78 *et seq.*. Defendant alleges the violation of his leave rights and the discrimination against him resulted in termination of his employment.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-**          **1**

## II. DISCUSSION

### A. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

///
///
///

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-           2**

**B. Facts**

Defendants' summary judgment motion is timely and their Statement of Facts (ECF No. 42) complies with LR 56.1(a).  There is no basis for striking the motion.  On the contrary, Plaintiffs' Responsive Statement of Facts (ECF No. 50) does not refer to the specific portion of the record- i.e., the specific portion of Exs. 1, 2, 3 and 4 attached to the Responsive Statement of Facts- where the alleged responsive fact is found.  Moreover, Plaintiff simply denies certain of the facts set forth by Defendants, but does not support these denials with any citation to the record whatsoever.  All of Defendants' statements of fact cited in this order are considered to be undisputed for the reasons set forth in Defendants' Reply Statement of Facts (ECF No. 56).

**C. FMLA and WFLA**

Excluded from FMLA coverage is "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. §2611(2)(B)(ii).  The WFLA contains the identical exclusion.  RCW 49.78.020(4)(b) provides: "'Employee' does not mean a person who is employed at a worksite at which the employer defined in (a) of this subsection employs less than fifty employees if the total number of employees employed by that employer within seventy-five miles of that worksite is less than fifty."

Plaintiff was hired by Town Square Media West Central Radio Broadcasting (WCRB) to work at its Yakima, Washington location as a Digital Sales Manager (DSM) beginning August 16, 2011. (Defendants' Statement of Facts Nos. 9, 13 and 14, ECF No. 56).  He worked at that location until his termination on June 27, 2013. (Defendants' Statement of Facts No. 12).  In addition to its Yakima worksite, WCRB has a Pasco worksite. (Defendants'

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-    3**

Statement of Facts No. 69).  Plaintiff contends that these two worksites are within 75 miles of each other and therefore, WCRB is subject to the FMLA and the WFLA.

Title 29, Part 825 of the Code of Federal Regulations contains regulations promulgated pursuant to the FMLA. 29 C.F.R. §825.111(b) provides that "[t]he 75-mile distance is measured by surface miles, using surface transportation over public streets, roads, highways and waterways, by the shortest route from the facility where the employee needing leave is employed."  Pursuant to Fed. R. Evid, 201, this court takes judicial notice that it is 88.8 miles from the Townsquare Media location in Yakima (4010 Summitview) to the Townsquare Media Tri-Cities location in Pasco (2621 West A Street) via Interstate 82. (https://www.google.com/maps).  Plaintiff is obviously aware of this since his argument is that using global positioning system coordinates (GPS), it is only 73.186 miles between the two locations "as the crow flies."

As a matter of law, none of the Defendants are subject to the FMLA or the WFLA and therefore, they are entitled to judgment as a matter of law on those claims.[1]

### D.  Age Discrimination

RCW 49.60.180(2) makes it unlawful for employers to discharge or bar any person from employment because of age. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 179, 23 P.3d 440, 445 (2001).  The United States Supreme Court has created a three step burden shifting protocol to use when evaluating motions for judgment as a matter of law in which the plaintiff lacks direct evidence of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

---

[1] The WFLA "mirrors" the FMLA and provides that courts are to construe its provisions in a manner consistent with provisions of the FMLA. *Crawford v. JP Morgan Chase NA*, 983 F.Supp.2d 1264, 1269 (W.D. Wash. 2013).

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT-            4**

Washington courts have adopted this protocol. *Hill* 144 Wn.2d at 180. Although the ultimate burden of persuasion that the defendant unlawfully discriminated against the employee lies with the plaintiff at all times, the *McDonnell Douglas* protocol imposes three additional burdens of production that shift between the plaintiff and the defendant. *Id*. at 180-181. If any of these burdens of production are not met, the opposing party is entitled to judgment as a matter of law. *Id*. at 180.

The first burden of production requires the plaintiff to set forth a *prima facie* case of unlawful discrimination. *Id*. at 181. To make out a *prima facie* case of wrongful discharge due to age, a plaintiff must show that he or she (1) was within the statutorily protected age group; (2) was discharged by the defendant; (3) was doing satisfactory work; and (4) was replaced by a significantly younger person. *Id.* at 188. The statutorily protected age group includes those over 40 years of age or older. RCW 49.44.090. Circumstantial, indirect, and inferential evidence will suffice to discharge the plaintiff's burden. *Hill*, 144 Wn.2d at 180.

If a *prima facie* case of discrimination is established, the second step of the *McDonnell Douglas* protocol imposes a burden on the defendant to "produce admissible evidence of a legitimate, non-discriminatory explanation for the adverse employment action sufficient to raise a genuine issue of fact as to whether the defendant discriminated against the plaintiff." *Id*. If the employer's burden of production is met, the presumption of discrimination raised by the *prima facie* case is rebutted. *Rice v. Offshore Sys., Inc.*, 167 Wn.App. 77, 89, 272 P.3d 865, *review denied,* 174 Wn.2d 1016, 281 P.3d 687 (2012).

If an employer produces a legitimate, non-discriminatory reason for the employee's discharge, the third and final step of the *McDonnell Douglas* protocol requires the employee resisting summary judgment to "produce evidence that raises a genuine issue of material fact on whether the reasons given by the employer for discharging the employee are unworthy of belief or are mere pretext

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-        5**

for what is in fact a discriminatory purpose." *Id*. at 89.  However, circumstantial evidence will suffice; the employee need not supply direct evidence or even "evidence beyond that offered to establish the prima facie case." *Id*.  The employee must only "meet his burden of production to create an issue of fact, but is not required to resolve that issue on summary judgment." *Id*.  Accordingly, summary judgment in favor of employers is seldom appropriate in discrimination cases. *Id*.

     Plaintiff was 40 years old at the time of his discharge in June 2013.  He turned 40 on February 20, 2013.  (Defendants' Statement of Facts No. 73, ECF No. 56).  This places Plaintiff inside the protected class outlined in RCW 49.44.090.  A 37 year old, Josh Richardson, born October 31, 1976, was hired after Plaintiff's termination and began working at WCRB in August 2013. (Defendants' Statement of Facts Nos. 75 and 76, ECF No. 56).  Although Plaintiff was replaced by someone outside the protected class, the person he was replaced by was not "significantly younger" than him.  Indeed, he was less than three years younger than Plaintiff.  See *Scholz v. SCAFCO Corp.*, 2015 WL 2452641 at *6 (Wash. App. Div. 3 2015)(50 year old and 57 year old not "significantly younger" than 58 year old plaintiff).  Therefore, Plaintiff has not satisfied the fourth element of a *prima facie* case of age discrimination.

     Furthermore, Defendants have produced admissible evidence of a legitimate, non-discriminatory explanation for Plaintiff's termination, namely that Plaintiff was not satisfactorily performing his job.  In response, Plaintiff has not produced evidence which, even if admissible, raises a genuine issue of material fact that this explanation is unworthy of belief or is mere pretext for what is in fact a discriminatory purpose.  Plaintiff's "Ex. 1" (ECF No. 50-1) is an unauthenticated document which Defendants' counsel asserts was part of an attempted discovery production by Plaintiff's counsel after the close of discovery.

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-**          6

According to Plaintiff, the first page of his Ex. 1 is an e-mail from "Defendant's executive, Pip Dicker, congratulat[ing] Plaintiff . . . for being a top performer for the entire year 2012." As part of their reply, Defendants submit a declaration from Aimee Yoerger (ECF No. 58) who was Director of Sales for Townsquare Media in Yakima from July 2010 to June 30, 2014, and in that capacity, supervised the Plaintiff during his employment. She notes that the email from Pip Dicker, dated January 4, 2013, "relates to the Seize the Deal platform, which was one specific digital revenue type." The subject line of the email refers to "STD Sales Summary/Ranking- December 2012-Final." According to Yoerger in Paragraph 3 of her Declaration:

> However, 2012 **Budgeted** Seize the Deal revenue accounted for 12.3% of the total budgeted digital market revenue. (For Seize the Deal only, final total market performance in 2012 contributed 22.6% of our total market digital goal). While Seize the Deal was an important sales component[,] it was ancillary to the corporate's focus of the "Big 3" which were: Display, Loyalty, and Online Radio. These were the areas under Mr. Wesley's leadership that the digital team was not meeting corporate expectations. In 2012, total market Display revenue attainment was $42,092, 50% of total budget of $83,400; total market Loyalty revenue attainment was $83,525, 79% of total budget of $105,480, and total market Streaming "On Line Radio" revenue attainment was $92,185, 91% of total budget of $101,000.

(Emphasis in original).

Although Plaintiff contends his results were "extraordinary" as documented by Pip Dicker's e-mail, he does not explain why they would be considered "extraordinary." Yoerger's declaration explains why they were not "extraordinary" when considering all components of Defendants' digital revenue stream.

Pages 2-5 of Ex. 1 are spread sheets for the months of January 2013 through April 2013 showing sales by account executives of the Digital Sales Team. According to Plaintiff, these spread sheets show that he exceeded his personal sales goal budget by 105%, 108% and 219% in January, February and March

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-    7**

2013. He says that in those same months, team sales reached 59%, 71% and 88% of the goal which he asserts "are similar to the numbers that Defendants' replacement employee produced and Defendants allege to be satisfactory."

According to Yoerger in Paragraph 4 of her Declaration: "The spreadsheets reflect each individual AE's [Account Executive's] sales and goals related to 'Sales on the Books' for digital revenue only, and 'Seize the Deal.'" As the digital manager, Mr. Wesley was responsible to make sure the digital team met their collective goal, which was never met as demonstrated by the . . . spreadsheets." Even if Plaintiff is accurate in saying the team sales percentages for January, February and March 2013 are similar to the numbers that Defendants' replacement employee (Josh Richardson) produced beginning in August 2013, there is nothing in the record to substantiate the assertion that those numbers have ever been satisfactory to Defendants.[2] To the contrary, the expectation was that 100% of the budget would be met each month and that meeting 80% of the budget was like getting a "C" grade. (Defendants' Statement of Material Fact No. 28). And Yoerger herself was demoted from Sales Manager to Account Executive for failing to meet the required budget in July 2014. (Defendants' Statement of Material Fact No. 74).

Furthermore, what Plaintiff fails to rebut with any evidence of his own is Defendants' evidence regarding "complaints made to WCRB employees and clients regarding Plaintiff's lack of engagement, lack of leadership, and not being present either because he was often absent or late to work, and being disengaged [from] the AEs." (Defendants' Statement of Fact No. 16; see also Defendants' Statement of Fact Nos. 17-32; 35-39; 41; 70).

---

[2] Defendants acknowledge that when Richardson became DSM in August 2013, "there was an initial dip in performance in September 2013, but then digital sales began a regular, steady increase toward meeting the required budget with 76.3% in October 2013, 80.6% in November 2013, and 97.8% in December 2013." (ECF No. 41 at p. 9).

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT-    8**

Plaintiff's failure to produce evidence raising a genuine issue of material fact that Defendant's proffered non-discriminatory reason for his termination is unworthy of belief or is mere pretext for what is in fact a discriminatory purpose means that he has also failed to establish the second element of a *prima facie* case of age discrimination: that his work performance was satisfactory.[3]

### E. Disability Discrimination

It is unlawful for an employer to discriminate against any person in the terms or conditions of employment, or discharge any employee because of the presence of any sensory, mental, or physical disability. RCW 49.60.180(1)-(3). Under the WLAD, a disabled employee has a cause of action for (1) disparate treatment and (2) failure to accommodate. *Hines v. Todd Pacific Shipyards Corp.*, 127 Wn.App. 356, 370, 112 P.3d 522 (2005). Plaintiff alleges claims for both disparate treatment and failure to accommodate.

Washington courts have adopted the *McDonnell Douglas/Burdine* three-part burden allocation framework for disparate treatment cases. *McDonnell Douglas, Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089 (1981). The plaintiff has the initial burden to prove a *prima facie* case. The plaintiff must show: 1) he or she was disabled; 2) he or she was able to perform his job; 3) he or she was fired and not rehired; and 4) a nondisabled person was hired. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 94 P.3d 930 (2004). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to present evidence of a legitimate non-discriminatory reason for its actions. The burden then shifts back to the plaintiff to produce evidence that the asserted reason was merely pretext. *Hines,* 127 Wn.

---

[3] Plaintiff's First Amended Complaint does not set forth a hostile work environment claim and therefore, the court will not consider such a claim on summary judgment.

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT-          9**

App. at 371. To survive summary judgment, the plaintiff must show a reasonable judge or jury could find his or her disability was a substantial motivating factor for the employer's adverse actions. *Id*.

The record is unclear if Plaintiff was suffering from any type of disability prior to his termination in June 2013. Even assuming he was, however, he cannot meet the second element of the *prima facie* case. For reasons already discussed, he has failed to produce admissible evidence raising a genuine issue of material fact that he was adequately performing his job.

An employer is required to reasonably accommodate a disabled employee unless the accommodation would be an undue hardship. *Pulcino v. Federal Express Co.*, 141 Wn.2d 629, 639, 9 P.3d 787 (2000). The burden is on the employee to present a *prima facie* case of discrimination, including medical evidence of disability. *Id*. at 642. A *prima facie* case of failure to reasonably accommodate a disability under the WLAD includes: (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. *Davis v. Microsoft Corporation*, 149 Wn.2d 521, 532, 70 P.3d 126 (2003).

An employer's responsibility to provide reasonable accommodation requires it to: (1) determine the extent of the employee's disability and how it could be accommodated; (2) take affirmative steps to help the employee continue working in his existing position; (3) take affirmative steps to inform the employee of job opportunities within the company; and (4) consider the employee for and move him into openings for which he is qualified. *Griffith v. Boise Cascade, Inc.*, 111 Wn.App. 436, 442, 45 P.3d 589 (2002). An employer is not required to offer the

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT-               10**

exact accommodation an employee desires. *Doe v. Boeing Co.*, 121 Wn.2d 8, 20, 846 P.2d 531 (1993).

Plaintiff asserts that his "counselor informed Defendants through the FMLA leave request paperwork that he had major depression and had to have time off work and then come back on a part-time basis." According to Plaintiff, he "was granted time off[4], but was denied the ability to work part-time[5] or work from home." Once again, as a threshold matter, it is unclear whether Plaintiff was in fact suffering from a disability prior to June 2013. In any event, however, nothing in the record suggests that Plaintiff requested to work from home as an ongoing accommodation. (Defendants' Statement of Material Facts No. 55, ECF No. 56).[6] As a result, he did not provide Defendants with an opportunity to evaluate whether such an accommodation would allow him to perform the essential functions of his job or would cause an undue hardship on his employer, WCRB. And Plaintiff has offered no evidence that working from home or working part-time would have allowed him to perform his job and would otherwise have constituted a reasonable accommodation.

### III. CONCLUSION

Defendants' Motion For Summary Judgment (ECF No. 41) is **GRANTED**. Defendants are awarded judgment on all of the claims asserted by Plaintiff in his First Amended Complaint.

**IT IS SO ORDERED.** The District Executive shall enter Judgment

---

[4] WCRB granted Plaintiff medical leave for the period from April 22, 2013 through May 10, 2013. (ECF No. 50-1, Request For Admission No. 34).

[5] WCRB granted Plaintiff's request to work part-time during the period between May 13, 2013 and May 24, 2013. (ECF No. 50-1, Request For Admission No. 35).

[6] Plaintiff admits he did not request any disability accommodation from WCRB when he returned from medical leave on May 27, 2013. (ECF No. 50-1, Request For Admission No. 38).

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-**      11

accordingly, forward copies of the Judgment and this Order to counsel, and close this file.

    **DATED** this __26th__ day of July, 2016.

                             *s/Lonny R. Suko*
                            LONNY R. SUKO
             Senior United States District Judge

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT-**     12